1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WYNATHEN KETCHUM, ANA MENJIVAR,        No. Civ. S-05-1098 RRB JFM
     acting for themselves and
12   others similarly situated,            **Memorandum of Opinion**
                                                    **and Order**
13
             Plaintiffs,
14
         v.
15
     CITY OF VALLEJO,
16
             Defendant.            /
17   _____/

18        Plaintiffs Wynathen Ketchum ("Ketchum") and Ana Menjivar

19   ("Menjivar") (collectively "Plaintiffs") filed an action on

20   behalf of themselves and other similarly situated Vallejo police

21   officers against the City of Vallejo ("Defendant") seeking to

22   recover unpaid compensation under the Fair Labor Standards Act,

23   29 U.S.C. § 201 et seq. ("FLSA"). Defendant now moves for

24   summary judgment on the ground that Plaintiffs' FLSA claim is

25   time-barred.   Alternatively, Defendant moves for summary

26   judgment on the ground that Plaintiffs are not entitled to the

27   compensation they seek under the FLSA.  Plaintiffs have filed a

28

                                    1

cross-motion for summary adjudication seeking a determination that time spent training and transporting Mounted Patrol Unit horses is compensable work under the FLSA.

For the reasons stated below, Defendant's motion is GRANTED in part and DENIED in part. Defendant's motion is GRANTED to the extent that it seeks a determination that the instant action has not been properly commenced. It is DENIED in all other respects. Plaintiffs' cross-motion for summary adjudication is GRANTED to the extent that it seeks a determination that the time spent training and transporting MPU horses is compensable work under the FLSA.[1]

## I. BACKGROUND

In or around 1995, the City of Vallejo created the Mounted Patrol Unit ("MPU") for the purpose of patrolling certain special events on horseback. Pl.'s Statement of Undisputed Material Facts ("UMF") ¶¶ 1-4; Def.'s Statement of Undisputed Material Facts ("UMF") ¶ 15.[2] MPU officers were trained to

---

[1] Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter. See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

[2] MPU events occurred approximately once a month. Def's UMF ¶ 16.

perform various law enforcement activities on horseback, including crowd control and making arrests. Pl's UMF ¶¶ 5-6. In order to join the MPU, officers were required to own their own horses and trailers as well as provide transportation to and from MPU events. Id. ¶¶ 8, 47-48.

Prior to assignment with the MPU, officers were required to complete a Basic Assessment Test ("BAT"), which was established as the minimum riding skills required for admission into the unit. Pl.'s UMF ¶ 12. Additionally, prospective MPU officers had to successfully graduate from a Peace Officer Services Training approved "Mounted Patrol" course. Id. ¶ 13. Once assigned to MPU, officers were required to satisfy continuing training requirements and pass an annual "in-service test," which was developed to measure horsemanship skills. Id. ¶¶ 19-20. MPU officers were also required to ensure that their horses were adequately trained and that they met certain criteria, including proper temperament, physical condition, appearance and vaccination. Id. ¶¶ 10, 22, 52-53.

Plaintiffs joined the MPU unit in 1996 and 1997, respectively. Pl.'s UMF ¶¶ 15, 17. Plaintiffs allege that MPU officers were required to work approximately four-to-five off-duty hours a week handling their horses in order to maintain the skills necessary to be an MPU officer. Id. ¶ 27. Plaintiffs assert that they were routinely instructed by supervisors to

train off-duty and, until July 2002, were required to spend six off-duty hours a week training their horses pursuant to a Vallejo Police Department policy.   Id. ¶¶ 29-30, 32-33. Plaintiffs further assert that even after this requirement was eliminated, MPU officers were still required to train off-duty on a regular basis in order to be effective MPU officers and to pass the annual "in-service" test.   Id. ¶¶ 29-33, 39-44.   Id. ¶ 46.

Although Plaintiffs acknowledge that they received two extra hours of compensation for time spent handling their horses before and after MPU events, they maintain that they spent significantly more off-duty time handling their horses in preparation for MPU events.   Pl's UMF ¶ 62.[3]   Specifically, Plaintiffs allege that they worked approximately four-to-seven uncompensated hours per week preparing their horses for MPU events from June 1, 2002 through June 1, 2005.   Id. ¶¶ 45-46.[4]

On June 1, 2005, Plaintiffs filed the instant action on their own behalf, and on behalf of other similarly situated MPU

_____

[3] Plaintiffs also acknowledge that they were reimbursed for expenses incurred in transporting their horses to and from MPU events and for veterinary expenses for on-duty injuries. However, Plaintiffs contend that they were not compensated for off-duty time in the ordinary care, veterinary care, shoeing, exercising, feeding, grooming and training of their horses. Pl.'s Response to Def.'s UMF ¶¶ 10-13.

[4] The MPU was deactivated in June 2005.  Def.'s UMF ¶ 25.

officers, seeking to recover for unpaid compensation for off-duty time spent caring, training and transporting MPU horses. Compl. ¶¶ 2, 4-5, 27.   More particularly, Plaintiffs seek the following relief: (1) unpaid compensation for all hours worked in excess of forty hours per week and eighty hours per pay period, at a rate of one and one-half their regular rate of pay; (2) a determination that Defendant's conduct was an intentional, knowing and willful violation of the FLSA, entitling Plaintiffs to liquidated damages and a three year period of recovery for unpaid compensation; and (3) attorney fees pursuant to 29 U.S.C. § 216(b).  Id. ¶ 40.

## II. DISCUSSION

Defendant argues that summary judgment is appropriate because Plaintiffs have failed to properly commence this action within FLSA's two-year statutory period since they have not filed consent to suit forms with this court as required by 29 U.S.C. § 216.   Alternatively, Defendant argues that summary judgment is appropriate because the time spent by Plaintiffs training and transporting their horses for MPU events is not compensable work under the FLSA.   These claims are addressed individually below.

**A.   Legal Standard**

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. § 56(c). The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. Id. at 248. A material fact is "genuine," if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. If the moving party meets its burden, the burden then shifts to the nonmoving party to establish, beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 988 (9th Cir. 2006) (internal quotation marks omitted) (citing Hunt v. Cromartie, 526 U.S. 541, 552 (1999)). "But the non-moving party must come forward with more than 'the mere existence of a

scintilla of evidence.' " <u>Miller</u>, 454 F.3d at 988 (quoting <u>Anderson</u>, 477 U.S. at 252).   Thus, " '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' " <u>Miller</u>, 454 F.3d at 988 (quoting <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).   Where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper.   <u>Miller</u>, 454 F.3d at 988.

**B.   FLSA Statute of Limitations**

Defendant argues that the instant action is time-barred because Plaintiffs have failed to properly commence it within FLSA's two-year statute of limitations since they have not filed consent to suit forms with this court as required by 29 U.S.C. § 216.

Plaintiffs filed the instant action as a collective action under the FLSA, which authorizes an employee to bring an action on behalf of "himself . . . and other employees similarly situated" if an employer has failed to pay overtime compensation.   29 U.S.C. § 216(b); <u>McElmurry v. U.S. Bank Nat. Ass'n</u>, 2007 WL 2263880, * 1 (9th Cir. 2007).[5]   The FLSA provides

---

[5] "Section 7 of the FLSA provides for overtime compensation: an employee who works more than forty hours a week must be paid at least one and one-half times his or her regular rate for

that no party may join a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).[6]  Under the FLSA, a "collective action" is considered to be commenced with respect to any individual claimant "on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought."  29 U.S.C. § 256(a).  A cause of action under the FLSA "may be commenced within two years after the cause of action accrued, and every such action shall be

---

those additional hours."  Dent v. Cox Communications Las Vegas, Inc., 2007 WL 2580754, * 2 (9th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)).  "Section 16 of the FLSA, 29 U.S.C. § 216, addresses courses of action available to remedy an employer's violation of the statute.  Subsection 16(b) provides, in relevant part, for a private cause of action to recover unpaid overtime compensation and 'an additional equal amount as liquidated damages.' [Citation].  The same subsection also allows a prevailing plaintiff to recover a reasonable attorney's fee and the costs of the action from the defendant."  Dent, 2007 WL 2580754 at *2 (citing 29 U.S.C. § 216(b)).

[6] A "collective action" differs from a class action insofar as each plaintiff must opt into the suit by giving his consent in writing.  McElmurry, 2007 WL 2263880 at * 1.  Thus, unlike a class action where an individual becomes a member of the class, and thereby bound by any judgment in the matter, unless he expressly opts-out, only those plaintiffs who expressly join the collective action are bound by its results.  Id.; see Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 906 n.9 (9th Cir. 2004) (if employees do not opt-in by filing consent to the collective action, they are not bound by the outcome of such action and may bring a subsequent private action).

forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

When a "collective action" is filed under § 216(b) all plaintiffs, including named plaintiffs are required to file a consent to suit form with the court in which the action is brought. <u>Harkins v. Riverboat Services, Inc.</u>, 385 F.3d 1099, 1101 (6th Cir. 2004); <u>Bonilla v. Las Vegas Cigar Co.</u>, 61 F.Supp.2d 1129, 1133 (D. Nev. 1999). A "collective action" is not deemed commenced with respect to each individual plaintiff until his or her consent has been filed. <u>Harkins</u>, 385 F.3d at 1101; <u>Bonilla</u>, 61 F.Supp.2d at 1133 (citing cases); <u>see</u> <u>also</u> <u>Gonzalez v. El Acajutla Restaurant, Inc.</u>, 2007 WL 869583, * 5 (E.D.N.Y. 2007) (an FLSA suit does not commence with respect to a plaintiff, including a named plaintiff, until their written consent has been filed).[7]

---

[7] In <u>Harkins</u>, the Sixth Circuit explained that "[t]he statute is unambiguous: if you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party. It makes no difference that you are named in the complaint, for you might have been named without your consent. The rule requiring written, filed consent is important because a party is bound by whatever judgment is eventually entered in the case, and if he is distrustful of the capacity of the 'class' counsel to win a judgment he won't consent to join the suit." <u>Harkins</u>, 385 F.3d at 1101.

Plaintiffs filed the instant action on June 1, 2005, alleging a single cause of action under the FLSA "on their own behalf and on behalf of all others similarly situated." Compl. ¶¶ 4-5.  To date, no Plaintiff, including the named Plaintiffs, has filed a written consent to join this action.  Plaintiffs, however, maintain that this is of no consequence because, as named plaintiffs, they are not required to file written consent forms with the court in order to commence their action.  Pl.'s Opp. at 8-9.  Alternatively, Plaintiffs contend that they are not required to file written consent forms because their action is a joint action alleging individual claims, not a "collective action." Id. at 9-10.  The court disagrees.

In the present case, the Plaintiffs have styled their action as a representative action seeking to represent themselves and other similarly situated MPU officers. Nonetheless, Plaintiffs assert that their action is not a "collective action."  The plain language of the Complaint contradicts this assertion.  Notably, the Complaint contains an entire section entitled "Collective Action Allegations," which sets forth the basis by which Plaintiffs, on their own behalf and "on behalf of all others similarly situated," seek to recover compensation for unpaid overtime under the FLSA. Moreover, the Complaint is completely devoid of any allegations supporting individual causes of action or individual damage

claims.  Indeed, the Complaint simply contains a single cause of action under the FLSA alleged on behalf of Plaintiffs and other "unnamed Plaintiffs" who "worked similar uncompensated hours" as Plaintiffs.

**Based on the foregoing, the court concludes that the instant action is a "collective action."**  It is captioned as a representative action under § 216 of FLSA and contains specific allegations seeking relief on behalf of named Plaintiffs for the benefit of similarly situated unnamed plaintiffs.  <u>See</u> <u>Gray v. Swanney-McDonald, Inc.</u>, 436 F.2d 652, 655 (9th Cir. 1971) (a collective action is an action brought by an employee or employees for and on behalf of himself or themselves and other employees similarly situated); <u>Bonilla</u>, 61 F.Supp.2d. at 1138 (a collective action is an action under § 216(b) where plaintiffs, on the face of their complaint, purport to sue on behalf of themselves and "others similarly situated").[8]

**Accordingly, because this action is a "collective action," each plaintiff's action commences on the date their consent to suit form is filed with the court.**  Therefore, because no consent to suit form has been filed, this action has not been

---

[8]  Although Plaintiffs contend that they abandoned their pursuit of a collective action, they failed to convert their action into a joint action on behalf of the named plaintiffs.

properly commenced.[9]   As such, Plaintiffs' FLSA claim is time-barred under FLSA's two-year statutory period, unless Plaintiff can demonstrate that the FLSA's three-year statutory period applies, i.e., Defendant willfully violated the FLSA.[10]

---

[9] To the extent that Plaintiffs rely on Allen v. Atlantic Richfield Co., 724 F.2d 1131 (5th Cir. 1984) to support their position that they were not required to file written consent forms to join this action, the court finds such reliance misplaced. Allen is distinguishable. In Allen, unlike here, the court concluded that the named plaintiffs were not required to file written consents because the suit consisted of a number of individual actions as it alleged individual causes of action, sought individual relief in the form of individual damage claims and none of the plaintiffs sought to represent anyone else. Allen, 724 F.2d at 1135. Additionally, to the extent that Plaintiffs rely on Anderson v. Montgomery Ward & Co., 852 F.2d 1008 (7th Cir. 1988) to support their position that they were not required to file written consent forms, the court finds such reliance misplaced. Anderson is distinguishable. In Anderson, unlike here, the case was styled as a joint action, not a representative action. Id. at 1011. As such, its reasoning has no applicability to the present case because the relief sought in that case was not sought on behalf of others similarly situated. See Harkins, 385 F.3d at 1102.

[10] Although Plaintiffs have not raised the issue of equitable tolling, this court must consider whether the circumstances warrant tolling the statute of limitations. See Partlow v. Jewish Orphans' Home of Southern Cal., Inc., 645 F.2d 757, 760 (9th Cir. 1981) (implying doctrine of equitable tolling into FLSA) abrogated on other grounds by Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989). Equitable tolling has generally been applied in two kinds of situations, the first being where a plaintiff was prevented from asserting a claim by some kind of wrongful conduct on the part of the defendant, and the second being where extraordinary circumstances beyond the plaintiff's control made it impossible to file the claims on time. See Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1997). The court concludes that this case is not an appropriate case for equitable tolling because Defendant has not engaged in any wrongful conduct which prevented Plaintiffs from filing their consent to suit forms. Nor have Plaintiffs

**C.    Willful Violations of the FLSA**

Section 255(a) states that a "cause of action arising out of a willful violation [of the FLSA] may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The Supreme Court has interpreted the term "willful" to mean "that the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

To establish a "willful violation" of the FLSA, the employee must prove "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin, 486 U.S. at 133; Adams v. U.S., 350 F.3d 1216, 1229 (Fed. Cir. 2003); Bull v. U.S., 68 Fed. Cl. 212, 272 (Fed. Cl. 2005). "The word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent." McLaughlin, 486 U.S. at 133. " 'Reckless

---

articulated any extraordinary circumstances beyond their control that prevented them from filing their consent to suit forms; indeed, the ability to file the consent forms was solely within Plaintiffs' control. See Bonilla, 61 F.Supp.2d 1129 (refusing to toll statute of limitation for three named plaintiffs who did not file consents). Finally, to the extent that Plaintiffs argue that their failure to file consent forms constitutes excusable neglect, the court disagrees. Plaintiffs have not presented any evidence demonstrating that they were not culpable for failing to file the consent forms.

disregard' " is defined as the 'failure to make adequate inquiry into whether conduct is in compliance with the Act.' "  Bull v. U.S., 68 Fed.Cl. at 272-73; see also Alvarez v. IBP, Inc., 339 F.3d 894, 908-09 (9th Cir. 2003) ("For § 255's extension to obtain an employer need not knowingly have violated the FLSA; rather, the three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute, although we will not presume that conduct was willful in the absence of evidence").  The fact that an employer acts unreasonably in determining its legal obligations is not sufficient to show that the employer acted recklessly.  See McLaughlin, 486 U.S. at 135 n.13; see also Allen v. Board of Public Educ. for Bibb County, 2007 WL 2332506, *15 (11th Cir. 2007) ("If an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be considered willful and the two-year statute of limitations should be applied").

In the present case, Plaintiffs allege that Defendant knowingly and willfully violated the FLSA by refusing to pay overtime compensation for off-duty hours worked caring, training and transporting MPU horses.  Specifically, Plaintiffs assert that Chief Nichelini was aware by June 2001 that MPU officers were working uncompensated off-duty hours caring, training and transporting their horses.  Pl.'s UMF ¶ 65.  Plaintiffs assert

14

that Defendant was aware of these hours because they made numerous complaints to supervisors requesting proper compensation for such hours. Id. ¶¶ 64-65. For their part, Defendant argues that it did not willfully violate the FLSA because it compensated Plaintiffs in accordance with the Department of Labor's Letter Ruling ("DOL Letter") dated December 30, 1985. Def.'s Mtn. for Summary Judgment ("MSJ") at 9-10. As such, Defendant argues that it is shielded from liability by the FLSA's good faith provisions. See 29 U.S.C. § 259; Alvarez, 339 F.3d at 907 (observing that § 259, " 'was designed to protect employers from liability if they took certain actions on the basis of an interpretation of the law by a government agency' ").

Section 259(a) provides, in relevant part: "no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay . . . overtime compensation under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the

action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect." See also 29 C.F.R. § 790.13.[11]   "To be insulated from liability under § 259's good faith exception, an employer must " 'show it acted in (1) good faith, (2) conformity with, and (3) reliance on the DOL's regulations or the Administrator's Opinion Letter.' " Alvarez, 339 F.3d at 907.[12]   "This test has both objective and subjective

---

[11] The agency referred to in subsection (a) of this section in the case of the FLSA is the Administrator of the Wage and Hour Division of the Department of Labor.   29 U.S.C. § 259(b)(1).

[12] "One of the most important requirements of sections 9 and 10 is proof by the employer that the act or omission complained of and his conformance with and reliance upon an administrative regulation, order, ruling, approval, interpretation, practice or enforcement policy, were in good faith.   The legislative history of the Portal Act makes it clear that the employer's 'good faith' is not to be determined merely from the actual state of his mind.   Statements made in the House and Senate indicate that 'good faith' also depends upon an objective test--whether the employer, in acting or omitting to act as he did, and in relying upon the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy, acted as a reasonably prudent man would have acted under the same or similar circumstances. 'Good faith' requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15(a) (footnotes omitted).   "The 'good faith' defense is not available to an employer unless the acts or omissions complained of were 'in conformity with' the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy

16

components, asking how a 'reasonably prudent [person] would have acted under the same or similar circumstances" and requiring "that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry.' "   <u>Id.</u> Under § 259, employers have an affirmative duty to inquire about uncertain FLSA coverage issues and the risk of a close case is on the employer.   <u>Id.</u>   The employer bears the burden of proving the good faith exception.   <u>Id.</u>

Here, Defendant argues that it is shielded from liability for its alleged failure to pay overtime compensation because its omission in this regard was based on its good faith reliance on the DOL Letter.   Def.'s Mtn. for Summary Judgment ("MSJ") at 9-10.   Specifically, Defendant asserts that it relied on the DOL Letter to: (1)compensate Plaintiffs at regular or overtime rates for MPU events; (2) reimburse Plaintiffs for transportation, shoeing, veterinary expenses and on-duty injuries; and (3) not

upon which he relied.   This is true even though the employer erroneously believes he conformed with it and in good faith relied upon it; actual conformity is necessary." 29 C.F.R. § 790.14(a) (footnote omitted).   "In addition to acting (or omitting to act) in good faith and in conformity with an administrative regulation, order, ruling, approval, interpretation, enforcement policy or practice, the employer must also prove that he actually relied upon it." 29 C.F.R. § 790.16(a).   If an employer has "no knowledge of the administrator's interpretation at the time of his violations, his failure to comply with the overtime provisions could not have been 'in reliance on' that interpretation; consequently, he has no defense under section 9 or section 10 of the Portal Act." 29             C.F.R.             §             790.16(b).

compensate Plaintiffs for off-duty hours spent caring, training and transporting their horses for MPU events.  Id. at 10.[13]

The DOL Letter specifically addresses two questions: (1) whether time spent by MPU officers traveling to their duty location with their horses is compensable under the FLSA, and (2) whether time spent by mounted officers feeding and grooming their own horses on their own time is compensable.  Decl. of Chief Robert W. Nichelini ("Nichelini"), Exh. A.  In this regard, the DOL Letter states unequivocally that the time spent by mounted officers feeding and grooming their horses during off-duty hours is not compensable under the FLSA.  Id.  With respect to travel, the DOL Letter states that normal travel from home to work, including the transporting of a personal horse to the job location prior to the commencement of an officer's regular shift, is normally not compensable under the FLSA.  Id.

Although the DOL Letter does not specifically address whether off-duty time spent training MPU horses is compensable

---

[13] Plaintiffs do not dispute that they were paid regular or overtime pay for MPU events and scheduled training for such events.  Pl.'s Response to Def.'s UMF ¶ 9.  Plaintiffs also do not dispute that they were compensated for two hours of handling time (one hour before an MPU event and one hour after), or that they were reimbursed for expenses such as transporting the horses to events, shoeing and veterinary expenses for on-duty injuries.  Id. ¶¶ 10-12.  Rather, Plaintiffs dispute whether Chief Nichelini actually relied on and acted in conformity with the DOL Letter in deciding how to compensate Plaintiffs for expenses and training related to MPU events.  Id. ¶¶ 8-14; Pl.'s Opp. to Def.'s MSJ at 15-20.

under the FLSA, Defendant contends that the letter implicitly holds that such time is not compensable because off-duty training is similar to off-duty feeding and grooming insofar as it is related to off-duty care.  As such, Defendant contends that it did not willfully violate the FLSA because its refusal to compensate Plaintiffs in this regard was based on its reasonable interpretation of the DOL Letter.  Additionally, Defendant contends that Chief Nichelini's reliance on the DOL Letter, combined with the absence of contrary authority, demonstrates that his refusal to compensate Plaintiffs for off-duty time spent caring, training and transporting MPU horses was not a willful violation of the FLSA because it was made in good faith and in conformity with the DOL Letter.  The court disagrees.

**The court concludes that a genuine issue of material fact exists as to whether Defendant acted in conformity with the DOL Letter when it refused to pay Plaintiffs for off-duty time spent training their horses for MPU events.**  This is because the DOL Letter is silent as to whether the off-duty training of MPU horses is compensable under the FLSA and Defendant did not demonstrate that it satisfied its affirmative duty to inquire about the uncertainty of FLSA coverage in this regard. Therefore, a genuine issue of material fact exists as to whether Defendant acted in conformity with the DOL Letter.

**Additionally, the court concludes that a genuine issue of material fact exists as to whether Defendant actually relied on the DOL Letter when it refused to compensate Plaintiffs for off-duty time spent caring, training and transporting MPU horses.** While Defendant submitted Chief Nichelini's declaration stating that he relied on the DOL Letter in determining how to compensate Plaintiffs for off-duty work related to the caring, training and transporting of MPU horses, Decl. of Nichelini ¶¶ 4-12, Plaintiffs submitted evidence indicating that Chief Nichelini never mentioned the DOL Letter when he addressed complaints regarding such hours. Supp. Decl. of Sergeant Howard Mason ("Mason") ¶¶ 3-4, 8, 9; Supp. Decl. of Menjivar ¶¶ 8, 9, 12; Supp. Decl. of Ketchum ¶¶ 4-5; Dep. of Captain Tom Hauser ("Hauser") at 16:3-25, 17:1-24. **Therefore, a genuine issue of material fact exists as to whether Chief Nichelini relied on the DOL Letter when he refused to compensate Plaintiffs for off-duty time spent caring, training and transporting MPU horses.**

For these reasons, the court DENIES Defendant's motion for summary judgment. **A genuine issue of material fact exists as to whether FLSA's three-year statute of limitations applies.** However, the court cautions that because this action has yet to be properly commenced, the statute of limitations will continue to run until Plaintiffs file their consent to suit forms with this court.

**D.   Compensable Work under the FLSA**

Defendant argues that summary judgment is appropriate because the time spent transporting MPU horses to and from MPU events and the off-duty time spent training MPU horses is not compensable under the FLSA.

The FLSA requires employers to pay overtime wages equal to one and one-half times the employee's regular rate for work performed in excess of 40 hours per week. Leever v. Carson City, 360 F.3d 1014, 1017 (9th Cir. 2004) (citing 29 U.S.C. § 207(a)); see Alvarez, 339 F.3d at 902 ("[i]t is axiomatic, under the FLSA, that employers must pay employees for all 'hours worked' "). The term "employ" is defined as "to suffer or permit to work" and work not requested but suffered or permitted is considered work time. See Reich v. Department of Conservation and Natural Resources, 28 F.3d 1076, 1082 (11th Cir. 1994) ("The reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted"). An activity constitutes "work," and is compensable under the FLSA, if it involves "physical or mental exertion (whether burdensome or not)," or the loss of an employee's time, that is "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Reich, 45 F.3d at 651; Alvarez, 339

F.3d at 902; see 5 C.F.R. § 551.401(a)(1)(2) ("Hours of work" is defined as all time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency, including "time during which an employee is required to be on duty" and "time during which an employee is suffered or permitted to work").

" 'Workday' as used in the Portal Act means, in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b); see 5 C.F.R. § 551.411(a)("workday" is defined as "the period between the commencement of the principal activities that an employee is engaged to perform on a given day, and the cessation of the principal activities for that day. All time spent by an employee in the performance of such activities is hours of work). Under the Portal Act an employee is entitled to be compensated for the "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday." 29 C.F.R. § 790.6(a).

Generally, commuting to and from work is not compensable under the FLSA. Reich, 45 F.3d at 650; see 5 C.F.R. § 551.422(b) ("An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal 'home to work' travel; such travel

22

is not hours of work"). However, time spent traveling is considered hours of work if: "[a]n employee is required to travel during regular working hours;" or "[a]n employee is required to drive a vehicle or perform other work while traveling").[14]   Under the FLSA, employees are not entitled to overtime compensation for "walking, riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or for "activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a)(1)(2).[15]   The " 'walking, riding or traveling' to which section 4(a) refers is that which occurs, whether on or

---

[14] The regulations governing the Portal Act provide that, as a general rule, same-day travel time to and from work on a regular workday is not compensable. 29 C.F.R. § 785.35. This is true whether an employee works at a fixed location or at different jobsites. 29 C.F.R. § 785.35. However, under § 785.37, an employee working at a fixed location must be compensated for travel time associated with a special/unusual one-day assignment in a city other than the one in which his or her place of employment is located. 29 C.F.R. § 785.37.

[15] "The words 'preliminary activity' mean an activity engaged in by an employee before the commencement of his 'principal' activity or activities, and the words 'postliminary activity' means an activity engaged in by an employee after the completion of his 'principal' activity or activities." 29 C.F.R. § 790.7(b).

off the employer's premises, in the course of an employee's ordinary daily trips between his home or lodging and the actual place where he does what he is employed to do.  It does not, however, include travel from the place of performance of one principal activity to the place of performance of another, nor does it include travel during the employee's regular working hours."  29 C.F.R. § 790.7(c).

The Supreme Court has held that a given activity constitutes a "principal activity," as opposed to a noncompensable preliminary or postliminary task, if it is "an integral and indispensable part of the principal activities for which covered workmen are employed."  Steiner v. Mitchell, 350 U.S. 247, 256 (1956); see also Reich v. New York City Trans. Auth., 45 F.3d 646, 649-50 (2d Cir. 1995).[16]  "To be 'integral and indispensable,' an activity must be necessary to the principal work performed and done for the benefit of the

_____

[16] "[I]n order for an activity to be a 'principal' activity, it need not be predominant in some way over all other activities engaged in by the employee in performing his job; rather, an employee may, for purposes of the Portal-to-Portal Act be engaged in several 'principal' activities during the workday. The 'principal' activities referred to in the statute are activities which the employee is 'employed to perform.' " 29 C.F.R. § 790.8(a) (footnote omitted).  The meaning of " 'principal activities' [is] to be construed liberally . . . to include any work of consequence performed for an employer, no matter when the work is performed." 29 C.F.R. § 790.8(a). "Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance." 29 C.F.R. § 790.8(c).

employer." <u>Alvarez</u>, 339 F.3d at 902-03.[17]   The test for principal activities and integral and indispensable parts of such activities is "whether [the activities] are performed as part of the regular work of the employees in the ordinary course of business." <u>Dunlop v. City Elec., Inc.</u>, 527 F.2d 394, 401 (5th Cir. 1976).[18]

**Based on the foregoing, the court concludes that the time spent transporting horses to and from MPU events was compensable work under the FLSA because such activity occurred between the commencement and conclusion of principal activities related to MPU events.** Plaintiffs' time spent preparing their horses and

_____

[17] "If an agency reasonably determines that a preparatory or concluding activity is closely related to an employee's principal activities, and is indispensable to the performance of the principal activities, and that the total time spent in that activity is more than 10 minutes per workday, the agency shall credit all of the time spent in that activity, including the 10 minutes, as hours of work." 5 C.F.R. § 551.412(a)(1).

[18] "In contrast to integral and indispensable activities, preliminary or postliminary activities are activities spent predominantly in the employees' own interests." <u>Jerzak v. City of South Bend</u>, 996 F.Supp. 840, 848 (N.D. Ind. 1998) (citing <u>Dunlop</u>, 527 F.2d at 398-400). "Activities are classified as preliminary or postliminary only if they are 'undertaken for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer.' " <u>Jerzak</u>, 996 F.Supp. at 848 (citing <u>Dunlop</u>, 527 F.2d at 398). Here, the activities at issue are not accurately characterized as preliminary or postliminary because they are not undertaken for Plaintiffs' convenience. Rather, such activities are required by Defendant and necessary to ensure that MPU horses perform up to the standards established by Defendant.

equipment,[19] including time spent traveling to pick-up their horses prior to MPU events, was sufficiently "principal" to commence the work day since such activities were integral and indispensable to Plaintiffs law enforcement duties at MPU events and were undertaken necessarily and primarily for the benefit of Defendant. See IBP, Inc. v. Alvarez, 546 U.S. 21, 34-7 (2005) (holding that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' that commences the workday and is compensable under the FLSA).[20] Likewise, Plaintiffs' handling of their horses following the cessation of MPU events was sufficiently "principal" to conclude the work day because such activities were integral and indispensable to Plaintiffs duties at MPU events and were

---

[19] Time spent preparing a horse for an MPU event included cleaning and grooming the horse as well as cleaning the horse's bridle, saddle, conch and breast collar. It also included hooking-up the trailer and inspecting it for safety as well as loading the horse, its equipment, water, hay and medical supplies. Pl.'s UMF ¶¶ 54-55, In Opp. to Def.'s MSJ.

[20] In IBP, the court concluded that donning special safety gear at the "place of performance" of the principal activity was sufficiently "principal" to commence the workday such that the walking of employees from that place to another area at the jobsite was compensable under FLSA. IBP, 546 U.S. at 34. The court held that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act. Moreover, during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by the FLSA." Id. at 37.

undertaken necessarily and primarily for the benefit of Defendant.    The handling of horses and equipment after MPU events was within the range of principal activities covered by the FLSA because such activities were necessary to ensure that MPU horses could perform up to the standard required by Defendant.    Indeed, Defendant's policy of compensating Plaintiffs for one hour before and one hour after each MPU event supports the determination that such activities were an indispensable part of the principal activities required by Defendant.  **Accordingly, because the transporting of horses to and from MPU events occurred after commencement of Plaintiffs' principal activities and ceased before Plaintiffs' principal activities concluded, it was compensable work under the FLSA.**[21]

---

[21] The court acknowledges that the DOL Letter states that mounted police unit officer time spent traveling to and from an assigned duty location *normally* is not compensable under the FLSA, even if it includes the transportation of a personal horse to the job location.  The court also acknowledges that, while DOL opinion letters are normally entitled to a high degree of deference, they are not binding on the court if they are plainly erroneous or are inconsistent with the regulations they interpret.  Imada v. City of Hercules, 138 F.3d 1294, 1297 (9th Cir. 1998).  The court concludes that the DOL Letter is not dispositive as to whether Plaintiffs are entitled to compensation for transporting MPU horses to and from MPU events.  This is because the transportation of horses to and from MPU events was not normal travel to and from an assigned duty location as it required MPU officers to spend significant time handling their horses and equipment before and after such travel.

**With respect to off-duty time spent training MPU horses, the court concludes that such time was compensable work under the FLSA because it was indispensable to the employer's use of MPU horses at MPU events.** In this regard, the court finds that the off-duty training of horses is sufficiently similar to the off-duty training of canines insofar as such training was integral to the effectiveness of MPU patrolled events and was pursued necessarily and primarily for the benefit of Defendant and its business.[22] Thus, the question becomes whether Defendant knew or should have known that Plaintiffs' worked overtime hours training their horses. See <u>Reich</u>, 28 F.3d at 1082 (employers are required to compensate employees for hours worked beyond his shift if the employer knows or has reason to believe that the employee continues to work); 29 C.F.R. § 785.12 ("If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked"); <u>see</u> <u>also</u> <u>Forrester v. Roth's I.G.A. Foodliner, Inc.</u>, 646 F.2d 413, 414 (9th Cir. 1981) ("[A]n employer who knows or should have known

---

[22] Courts have found, as a general matter, that time spent by a police officer caring for or training his or her assigned police dog during that officer's off-duty hours constitutes compensable work as it is an integral and indispensable part of officer's principal activities. See <u>Jerzak</u>, 996 F.Supp. at 846 (citing cases).

that an employee is or was working overtime must comply with the provisions of [29 U.S.C.] § 207 [mandating overtime pay]").[23]

An employer's knowledge of overtime hours worked is measured in accordance with his duty to inquire into the conditions prevailing in his business. <u>Reich</u>, 28 F.3d at 1082. This duty cannot be avoided simply because the business precludes his personal supervision and compels reliance on subordinates. <u>Id.</u>   In reviewing the extent of an employer's awareness, a court need only inquire whether the circumstances were such that the employer either had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire such knowledge. <u>Id.</u>[24]

**Based on the evidence in the record, the court concludes that Defendant knew that Plaintiffs worked off-duty hours training their horses for MPU events.** Sergeant Mason, Field

---

[23] <u>See</u> 5 C.F.R. § 551.423 (a)(2)(i)(ii) (time spent training outside regular working hours is considered hours of work if: "(i) The employee is directed to participate in the training by his or her employing agency; and (ii) The purpose of the training is to improve the employee's performance of the duties and responsibilities of his or her current position."

[24] Management has a duty to exercise its control and ensure that work it does not want performed is not performed. It cannot sit back and accept benefits from employees without compensating them. <u>Reich</u>, 28 F.3d at 1082 (citing 29 C.F.R. § 785.13). Moreover, once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours. <u>See</u> <u>Forrester</u>, 646 F.2d at 414.

Supervisor and creator of the MPU, submitted a declaration stating that the Vallejo Police Department had a policy (authorized by Chief Nichelini)[25] requiring MPU officers to commit at least six off-duty hours to MPU related training a week. Decl. of Mason ¶¶ 4, 6. While this requirement was eliminated in July 2002, Sergeant Mason declared that he was aware that MPU officers regularly trained their horses during off-duty hours. Id. ¶¶ 13-14, 16.[26] Additionally, Sergeant Mason stated that he met several times with Chief Nichelini and Captain Hauser to discuss complaints about overtime compensation regarding off-duty work related to MPU duties. Supp. Decl. of Mason ¶¶ 5, 7, 8.[27] Finally, Captain Hauser stated in his deposition that he met with Chief Nichelini and discussed officer complaints about overtime compensation regarding off-duty work related to MPU duties. Dep. of Hauser at 16:3-22.

**Based on the foregoing, the court concludes that Defendant was aware that MPU officers worked off-duty hours training their horses for MPU events.** Both Sergeant Mason and Captain Hauser

---

[25] Decl. of Nichelini ¶¶ 4-5.

[26] Sergeant Mason retired in 2004. Decl. of Mason ¶ 2.

[27] Plaintiffs both submitted declarations stating that they complained to supervisors on numerous occasions about overtime compensation regarding off-duty hours worked in connection with MPU events. Supp. Decl. of Menjivar ¶¶ 4-8; Supp. Decl. of Ketchum ¶ 4.

stated that they were aware of MPU officer complaints about such hours and that they discussed this issue with Chief Nichelini.[28] Accordingly, Defendant had knowledge that Plaintiffs were working off-duty hours training their horses for MPU events.

For these reasons, the court DENIES Defendant's motion for summary judgment and GRANTS Plaintiffs' cross-motion for summary adjudication.

### III. CONCLUSION

For the above stated reasons, Defendant's motion is GRANTED in part and DENIED in part. Defendant's motion is GRANTED to the extent it seeks a determination that the instant action has not been properly commenced. It is DENIED in all other respects. Plaintiffs' cross-motion for summary adjudication is GRANTED to the extent that it seeks a determination that the

///

///

///

---

[28] See 29 U.S.C. § 203 (employer is defined broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ."); Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983) disapproved of on another ground by Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 539 (1985) (the definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes).

time spent training and transporting MPU horses is compensable work under the FLSA.

ENTERED this 12th day of October, 2007.

s/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE